HILTON, Chief District Judge,
dissenting:
I believe the Secretary of Labor exceeded the scope of her delegated authority in promulgating regulations under the Family and Medical Leave Act (“FMLA”), 29 U.S.C. § 2601 et seq., that expanded the expressed limits of the statute. In so doing, the Secretary contradicted the express will of the Congress. Because I find that the Secretary’s regulation that defines “continuing treatment” violates Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and is unconstitutional, I would reverse and order that *840 judgment be entered for AT & T. I respectfully dissent.
The Constitution delegates to Congress alone “[a]ll legislative [p]owers.” U.S. Const, art. I, § 1. Congress alone makes the law which the Executive enforces under Article II of the Constitution. Congress cannot delegate its legislative power. See Whitman v. American Trucking Associations, 531 U.S. 457, -, 121 S.Ct. 903, 912, 149 L.Ed.2d 1 (2001); Loving v. United States, 517 U.S. 748, 771, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996); J.W. Hampton, Jr., & Co. v. United States, 276 U.S. 394, 409, 48 S.Ct. 348, 72 L.Ed. 624 (1928). Out of these bedrock separation of powers principles, the Supreme Court has carved a limited exception for an administrative agency to elucidate or explain a provision of a statute that it executes provided Congress gives the agency such authority and gives it intelligible principles to guide its rulemaking. See Whitman, 531 U.S. at -, 121 S.Ct. at 912; Chevron, 467 U.S. at 842, 104 S.Ct. 2778. A delegation of rulemaking authority is arguably the exercise of legislative power, the difference between legislative power and permissible administrative regulation being a very fine line. See, e.g., Whitman, 531 U.S. at -, 121 S.Ct. at 920 (Thomas, J., concurring); Whitman, 531 U.S. at -, 121 S.Ct. at 920 (Stevens, J., concurring).
When an agency engages in rulemaking, it must do so carefully because of the delicate constitutional authority upon which such rulemaking rests and because of the scrutiny that courts will bring to bear on such exercises of raw, sweeping-power by unelected and unaccountable officials. See Chevron, 467 U.S. at 843 n. 9, 104 S.Ct. 2778 (“The judiciary is the final authority on issues of statutory construction.”). Accordingly, the Supreme Court has fashioned a two part test for a court to apply when it reviews an agency’s construction of a statute which the agency administers. See id. at 842-43, 104 S.Ct. 2778. First, if Congress’ intent is express and unambiguous, it must be given effect both by the courts as well as the agency in question. See id. However, if Congress has not directly addressed the precise question at issue, the issue for the court is whether the agency’s regulation is a permissible construction of the statute. See id. at 843, 104 S.Ct. 2778. In determining whether an agency’s interpretation of a statute is a permissible one, the Court must give the agency’s interpretation controlling wéight “unless [it is] arbitrary, capricious, or manifestly contrary to the statute.” Id. at 844, 104 S.Ct. 2778.
Because legislative power is vested in Congress alone, see U.S. Const. art. I, § 1; Whitman, 531 U.S. at -, 121 S.Ct. at 920 (Thomas, J., concurring), we must look first and foremost to its express will in the plain terms of the statute itself. The Act defines a “serious health condition” as:
an illness, injury, impairment, or physical or mental condition that involves—
(A) inpatient care in a hospital, hospice, or residential medical care facility; or
(B) continuing treatment by a health care provider.
29 U.S.C. § 2611(11). At issue here is the definition of “continuing treatment.” The Secretary promulgated a regulation that defined “continuing treatment” as including diagnosis and monitoring of a condition. See 29 C.F.R. § 825.114(b). She also promulgated a regulation defining “continuing treatment” in such a way so as to include some minor illnesses.[1] See Maj. Op. at 834-35.
*841 The majority states that the legislative history provides no guidance about what does or does not constitute “continuing treatment.” See Maj. Op. at 834. The majority also states that the statute does not define “continuing treatment” any further and thus there is an absence of expressed Congressional intent. See id. What the majority overlooks, however, is the most persuasive expression of legislative intent that exists: the plain meaning of the words of the statute itself. There is no need — in fact, it is not permissible — to defer to an agency interpretation of a statute when Congress has been express in the plain terms of the statute itself. See Chevron, 467 U.S. at 842-43, 104 S.Ct. 2778.
The majority implicitly finds “continuing treatment” to be ambiguous or else it would not have deferred to the agency’s interpretation. I do not find “continuing treatment” to be ambiguous at all. I find persuasive AT & T’s argument that the word “treatment” is clear and unambiguous in and of itself. In the medical context, it means “the systematic effort to cure illness and relieve symptoms, as with medicines, surgery, etc.,” Random House College Dictionary 1400 (rev. ed.1980), or “management in the application of remedies; medical or surgical application or service,” 18 Oxford English Dictionary 464 (2d ed.1989) (emphasis added). It is different from “diagnosis” which means “the process of determining by examination the nature and circumstances of a diseased condition,” Random House College Dictionary 366 (rev. ed.1980), or “determination of the nature of a diseased condition; identification of a disease by careful investigation of its symptoms and history,” 4 Oxford English Dictionary 596 (2d ed.1989). It is also different from mere monitoring or supervision of a condition. See 9 Oxford English Dictionary 1002 (2d ed.1989) (monitoring means “to observe, supervise, or keep under review; to measure or test at intervals”); 17 Oxford English Dictionary 245 (2d ed.1989) (supervision means “general management, direction, or control; oversight, superintendence”). It is elementary that in medicine, first, a physician diagnoses a condition and then, second, he treats that condition. The definition of one is not subsumed within the other. The fact is that they are different terms with different, plain meanings.
The majority recognizes that “treatment” does not mean “diagnosis” or “monitoring” and vice versa when it states,
There is thus nothing upon which to base a conclusion that the regulatory definition of treatment, which allows for situations in which a health care provider determines that an illness requires continued monitoring but not aggressive treatment, is contrary to congressional intent.
Maj. Op. at 834 (emphasis added). I believe the majority is incorrect: The statute is clear that treatment is required, not mere monitoring. The majority recognizes that there is a difference between the medical acts of diagnosis/monitoring and treatment, but chooses to disregard the expressed will of the Congress that one be covered by FMLA but not the other. We presume that Congress means what it says when it writes laws. Had Congress intended to provide FMLA leave for diagnosis and monitoring in addition to treatment, it would have said so.[2] Instead, it *842 provided only for treatment. In 29 C.F.R. § 825.114(b), the Secretary expanded the definition of “continuing treatment” to include diagnosis, supervision, or monitoring, in contravention of the clear language of Congress. 29 C.F.R. § 825.114(b) is therefore unconstitutional.[3]
When 29 C.F.R. § 825.114, which defines “serious health condition,” is viewed more broadly, it becomes even more apparent that the Secretary’s rulemaking exceeded the limits of the statute. Under paragraph (a), “serious health condition” is defined as either “inpatient care,” 29 C.F.R. § 825.114(a)(1), or “continuing treatment,” 29 C.F.R. § 825.114(a)(2). The regulation defining “continuing treatment” in turn provides two bases for coverage: treatment two or more times by a health care provider, 29 C.F.R. § 825.114(a)(2)(i)(A), or treatment by a health care provider on at least one occasion which results in a “regimen of continuing treatment” under the supervision of a health care provider, 29 C.F.R. § 825.114(a)(2)(i)(B).[4] While Miller sought coverage under the former, the latter prong demonstrates the internal inconsistency and arbitrariness of the Secretary’s regulations. The second prong is a circular definition. It defines “continuing treatment” as requiring one visit to the doctor that is followed by ... “continuing treatment”! This strikes me as representative of the futile attempt by the agency to define what is already a clear definition itself. “Serious health condition” is defined, in part, as a condition requiring “continuing treatment.” It is downright bizarre to then define “continuing treatment” (in the second prong) as requiring “continuing treatment.” This is indicative of the fact that “continuing treatment” means what it says: treatment (not diagnosis, supervision, monitoring, etc.) on a continuing basis. Both paragraphs (a) and (b), when read together, therefore evince a consistent scheme by the Secretary to expand the scope of FMLA coverage beyond what was intended by Congress.
There is an additional basis upon which I would find the Secretary’s regulations to be an unconstitutional exercise of agency rulemaking. It is undisputed that Miller had the ordinary, garden variety flu. Congress never intended the ordinary flu to be covered by FMLA leave, as the majority acknowledges.[5] See Maj. Op. at 834-35. Until recently, the Department of Labor agreed that the flu was specifically excepted from the FMLA. See Maj. Op. at 831-32. The question under Chevron is of course not how we would interpret the statute de novo but, rather, whether the agency interpreted the statute in a permissible manner. Despite Congress’ intent not to cover the ordinary flu, the majority acknowledges that the Secretary’s “test” for “continuing treatment” might lead the ordinary flu to be covered, as is the result *843 in this case. See Maj. Op. at 835. This, the majority claims, is not arbitrary. I disagree. Returning to first principles, the Secretary had the authority to promulgate regulations to enforce the FMLA only. What the Secretary did — and what the majority acknowledges she did — was to expand the scope of the statute beyond that which was intended by the Congress. The majority concedes this point explicitly:
It is possible, of course, that the definition adopted by the Secretary will, in some cases — and perhaps even in this one — provide FMLA coverage to illnesses that Congress never envisioned would be protected.
Maj. Op. at 835. Expanding the coverage of the statute beyond what Congress intended is not only “arbitrary, capricious, [and] manifestly contrary to the statute,” Chevron, 467 U.S. at 844, 104 S.Ct. 2778, but it is also a usurpation of legislative power, in violation of Article I of the Constitution. In short, it was arbitrary and capricious for the agency not to create a minor illness exception when it made the regulations in question and to expand the protection of the FMLA beyond what was intended by Congress.
Unelected, and therefore unaccountable, agency officials do not have the constitutional right or power to make law. See U.S. Const. art. I, § 1; Chevron; Whitman. By contradicting the express will of Congress, what the Secretary did here was to make law, not enforce it. The Secretary’s regulations as they relate to “continuing treatment” are unconstitutional usurpations of Congressional power and should be found unconstitutional under the Chevron doctrine either because they are contrary to the plain terms of the statute or because the Secretary’s regulations are impermissible constructions of the statute. Accordingly, I would reverse the district court and direct it to enter judgment for AT & T. This would moot the issues of after-acquired evidence and mitigation. It follows that I would grant AT & T’s motion for attorneys’ fees.
For these reasons, I respectfully dissent.

. These rules were promulgated by authority of 29 U.S.C. § 2654: “The Secretary of Labor shall prescribe such regulations as are necessary to carry out subchapter I of this chapter *841 and this subchapter not later than 120 days after February 5, 1993.”

. In fact, a prior version of the bill, in defining "serious health condition,” did provide for continuing treatment or continuous super *842 vision. It was later narrowed to provide only for continuing treatment. See 137 Cong. Rec. H9777 (daily ed. Nov. 13, 1991) (statement of Rep. Goodling) (discussing Gordon Hyde Amendment).

. This distinction is key in this case because Miller's second visit to Dr. Sommerville was, as the majority notes, see Maj. Op. at 831, for the purpose of examination only.

. Each, as the majority points out, requires proof of incapacity for three days.

.Since the majority has ably reviewed the extensive legislative history indicating Congress' intent in this regard, I will not repeat it here. I would only add that there were a number of floor statements in which Congressmen stated their understanding that the flu and other minor illnesses were not to be covered by the FMLA. See, e.g., 137 Cong. Rec. H9727-28 (daily ed. Nov. 13, 1991) (statement of Rep. Roukema) ("sniffles or the flu” are not covered under the FMLA because they are not serious conditions).